EUNICE M. STANTON, CAROLINE CLUTE AND MARY ANDERSON, APPELLANTS, *v.* MARY L. CROSBY AND SALMON H. PALMER, AS ADMINISTRATORS, ETC., OF ALFRED C. CROSBY, DECEASED, RESPONDENTS.*

*Divorce — Service by publication — jurisdiction — fraud — Application by widow to set aside letters of administration — decree of divorce may be attacked collaterally in.*

In actions for divorce, in which the defendant does not reside in the county in which the action is brought, the statutes of Ohio authorize the summons to be served by publication, and require in such case that the summons and a copy of the petition be forthwith mailed to the defendant, unless it appear to the court that his or her residence is unknown to the applicant and cannot be ascertained by him with reasonable diligence. Under these statutes a husband procured a divorce from his wife, the summons having been served by publication and no copy having been mailed to the wife, the record alleging that the defendant's residence was unknown, and that the petitioner had used due diligence to ascertain the same.

* Decided June term, 1876.

It appeared that in fact the residence of the defendant was at that time known to the petitioner. *Held*, (1) that the court failed to acquire jurisdiction of the action for the reason that a copy of the summons was not mailed to the defendant as required by law; (2) that even if jurisdiction were acquired, it was based upon fraud and falsehood, and that the courts of this State would treat the decree obtained thereby as null and void, as against the defendant therein.

The invalidity of such decree may be set up in a collateral proceeding, upon an application by the widow to set aside letters of administration granted upon the estate of her deceased husband, on the ground that she was entitled to administer the same.

APPEAL from a decree of the surrogate of Steuben county, revoking letters of administration, heretofore issued to the appellants, upon the estate of Alfred C. Crosby, deceased, and issuing letters thereon to the respondents, the respondent Maria L. Crosby claiming to be entitled thereto as widow of the deceased. Upon the hearing before the surrogate the following opinion was delivered by him.

THE SURROGATE:

This application is founded upon an alleged false representation upon which letters of administration have heretofore been granted to respondents, upon the estate of Albert C. Crosby, deceased. The alleged false representation consisted in the allegation, that the intestate left no widow. The petitioner in the present proceeding claims to be the widow of deceased, and as such, entitled to administration on his estate. It is admitted that petitioner was married to intestate on the 16th day of August, 1860, but respondents insist that the marriage was dissolved by the decree of a court of competent jurisdiction in Ohio, where the parties were domiciled. After marriage, which took place in Michigan, the parties having lived in several places, finally became residents of Coshocton, Ohio, remaining together till September, 1864, at which time the petitioner left the intestate, going first to one place and then to another, and at last, in 1866, to Cleveland, where she lived, supporting herself by working as a dressmaker until the spring of 1873.

On the 26th of March, 1869, intestate filed, in the Court of Common Pleas of Miami county, Ohio, his petition for divorce from Maria L. Crosby, and a dissolution of his marriage with her,

setting forth that he was a resident of Ohio for three years, then last past, and at the time a *bona fide* resident of the county of Miami, and, as a ground for the divorce prayed for, that the said Maria L. Crosby had left and abandoned him without just cause or provocation in September, 1864, and remained willfully absent ever since, which, it appears by the law of Ohio, is just cause for dissolving the marriage. On the 30th June, 1869, a decree was entered, dissolving the marriage, commencing as follows:

" And now comes the said Alfred C. Crosby, by M. H. Jones, his attorney, and thereupon this cause came on to be heard upon the petition and testimony, and was argued by counsel, on consideration whereof the court do find that due notice of the filing and pendency of this petition was given to the said defendant according to law, etc."

The petitioner claims that notwithstanding this finding of the decree, the court did not obtain jurisdiction of the defendant, and that the decree is therefore null and void. The statute of Ohio, produced in evidence, provides: " That in all cases where a divorce shall be applied for, the complainant shall file his or her petition in the office of the clerk of the Court of Common Pleas, of the proper county, which petition shall state the true cause of complaint, and if the adverse party is a resident of the county in which the petition is filed, the clerk of said court shall issue a summons directed to the sheriff of the county, which, together with a copy of the petition, shall be served on the adverse party, at least six weeks before the hearing of the case; but if the defendant is not a resident of such county, then notice of the pendency of said petition, containing the substance and prayer thereof, shall be given by publication in some newspaper of general circulation in the county in which the case is pending, for the term of six consecutive weeks, and in such a case a summons and copy of the petition shall forthwith on the filing of the petition, be deposited in the post-office, directed to the defendant at his or her place of residence, unless it shall be made to appear to the court by affidavit or otherwise, that such residence is unknown to the applicant, and could not with reasonable diligence, be ascertained by him or her; or if the defendant shall reside in any other county of this State, the applicant, may, at his or her election, give notice by a

service of a summons and a copy of the petition, at least six weeks before the hearing of said case, and said case may be heard and decided at any time after the expiration of six weeks from the service of notice, either by service of summons or after the first publication in some newspaper as provided in this section."

Several objections are taken to the sufficiency of the averments and proofs appearing in the record, to show the jurisdiction of the Miami Court of Common Pleas over the person of the respondent in the divorce proceedings, but I think these averments and proofs are colorable, to say the least, and as the Ohio court has pronounced them sufficient, this adjudication is conclusive in the courts of this State. The defects, if any, are matters of practice, and cannot be questioned collaterally. ( *Van Deusen* v. *Sweet*, 51 N. Y., 378–386.)

It is, however, well settled, that want of jurisdiction over the party may be shown even in contradiction to the averments of the record. In this case if the respondent in the petition for divorce had been a resident of the county when the petition was filed, jurisdiction could have been obtained only by personal service of process. If the party on whom service was to be made was not a resident of such county, service was to be made by publication in a newspaper of general circulation, and also by depositing the summons and a copy of the petition in the post-office, directed to the defendant at his or her place of residence, unless it should be made to appear to the court that such residence was unknown and could not with reasonable diligence be ascertained.

There is an averment in the record that the defendant's residence was unknown, and that the petitioner therein had used due diligence to ascertain the same. There is no proof of a deposit of the summons and copy of petition in the post-office, directed to the defendant, and if it is true that her residence was unknown and could not, with reasonable diligence, be ascertained, this was unnecessary; the service was complete by publication alone, and the jurisdiction of the court over the parties complete, they being both residents of the State where the proceedings were pending.

It is proved that no personal service was made, and that the defendant never had notice of the proceedings till after the decree was made. It is also satisfactorily proven that at and during the time of the pendency of the proceedings for divorce, the residence

of the defendant was known to the petitioner, the intestate. It is proved and not contradicted, that she was a resident of Cleveland in the State of Ohio, from 1866 to 1873, and was not absent from it during that time, except two weeks following the 11th of March, 1869, when she went to Pontiac, in Michigan, to attend a funeral. She herself testifies that she saw him at her boarding-house in Cleveland, where he called on her three times in 1867. She also saw him in 1868, once in June and once in the middle or last of November, at Mr. Smith's, with whom she boarded from December, 1867, to December, 1868, and whose house she made her home till 1870. Mrs. Smith, whose evidence was taken by commission, testified to her residence at her house in 1868, and the months of January, February and March, 1869. That in 1868 Crosby called at her house, and again in the spring or summer of 1869. That she heard a conversation between him and her hired girl in which he inquired for Mrs. Crosby and asked what time she would be at home that evening, and was informed by the girl that she would be at home at seven o'clock. He also inquired what time she left in the morning, and was told by the girl that she left at half-past six.

Mary Stapleton testifies that in 1868 and in January, February and March, 1869, she resided with Henry Smith on St. Clair street, Cleveland, Ohio; that Crosby called there in 1868, also in January, February and March, 1869. On the first occasion he asked for Mrs. Crosby, and was told she was there. The last time he also asked if she was there and was told she was not, but would be there at seven o'clock in the evening and if he wanted to see her he could do so between six and one-half and seven o'clock in the morning. Mrs. Crosby testifies she saw Crosby at Smith's in 1868.

Almeda Carpenter testifies that in 1868 and in January, February and March, 1869, she resided at No. 76 Ontario street, in Cleveland. That in 1868 Crosby called at her residence but made no inquiry about his wife. That he called again in the forepart of 1869 and inquired where she was. The witness directed him to inquire at Mr. Smith's, and he then requested her (witness) to tell her that he had got a divorce from her.

Notwithstanding a discrepancy between Almeda Carpenter and the other witness as to the fact of Mrs. Crosby's residence at No.

76 Ontario street in 1868, it is not controverted that she was a resident of Cleveland from 1866 to a period subsequent to the decree of divorce, being absent but two weeks in the whole time, and then only temporarily.

The evidence leaves no doubt that Crosby knew Cleveland to be her residence in 1867 and in 1868; and also in 1869, very soon after he obtained the decree. The conclusion is inevitable that at the time of filing his petition and during the pendency of the proceedings therein her residence was known to him.

If it were so known the averment in the record that it was not, was a falsehood and a fraud, practiced, and continued to confer jurisdiction upon the court over the person of defendant by a constructive service which should give her no notice of the proceedings of which, if the truth had appeared, she would, in all likelihood, have received actual notice.

I have come to the conclusion that the Ohio court failed to obtain jurisdiction of the defendant in the proceedings for divorce, for want of such service of the summons and petition on her as was required by law in cases where the residence of the defendant is not unknown. But if the proof made to the court was sufficient to confer jurisdiction it was based on falsehood and fraud, practiced on the court toward the defendant, which entitles her and calls on this court to treat the decree obtained thereby as a nullity. It is true as a general rule that fraud, in obtaining a judgment, cannot be set up in a collateral proceeding by a party or one representing or in privity with him. But this rule only relates to fraud which involves the merits of the judgment. It does not govern the case of jurisdiction fraudulently attempted to be obtained.

I cannot find that the precise question involved in this case has ever been decided, but there are numerous cases which I think establish a principle which renders the decree in question invalid. (*Borden* v. *Fitch*, 15 Johns., 141; *Christmas* v. *Russell*, 5 Wall. [U. S. R.], 304; *Dunlap* v. *Cady*, 31 Iowa, 260; 7 Amer. R., 129; *Goupil* v. *Simonson*, 3 Abb. Pr., 474; *Metcalf* v. *Clark*, 41 Barb., 47; *Carpenter* v. *Spooner*, 2 Sandf., 717.) And it may be impeached collaterally for want of jurisdiction, or fraud in obtaining it. (*Borden* v. *Fitch*, 15 Johns., 141; *Christmas* v. *Russell*, 5 Wall., 304; *Thompson* v. *Whitman*, 18 Wend., 457; *Knowles* v. *Gas-light Co.*, 19

id., 58; *Hill* v. *Modehull*, 11 L. J., 223; *Kerr* v. *Kerr*, 41 N. Y., 272.) It is urged on the part of respondents that by omitting after notice of the decree to take steps to set it aside and otherwise acquiescing in it, petitioner has waived her right to object to its validity. She has, however, taken no benefit under the decree nor done any thing to induce the deceased or his representatives to any line of action prejudicial to their interests in consequence of it. There is no estoppel. It is her right to resist it wherever it is sought to be used against her. (*Dunlap* v. *Cady*, 31 Iowa, 260.) By reason, therefore, of the false representation in the petition on which administration was heretofore granted, the same must be revoked and letters issued to the petitioner as the widow of intestate.

*Hakes & Stevens*, for the appellants.

*Rumsey & Miller*, for the respondents. The statute gives the surrogate authority to revoke letters of administration granted on false representations, made by the persons to whom the same were granted. (Laws of 1837, chap. 460, § 34; 4 Statutes at Large, 493; *Kerr* v. *Kerr*, 41 N. Y., 272, 276.) Proceedings for divorce in Ohio as well as in New York depend entirely upon the statute, and were not known or recognized at common law or in Courts of Chancery. (*Peugnet* v. *Peters*, 48 Barb., 566; *Tappan* v. *Tappan*, 6 Ohio St., 64, 66.) And the court attempting to exercise jurisdiction in such a case, although a court of general jurisdiction acts, *quoad hoc*, as a court of limited and inferior jurisdiction, and the record must show that its powers were strictly pursued. (*Denning* v. *Corwin*, 11 Wend., 647; *Foot* v. *Stevens*, 17 id., 483, 488; *Commonwealth* v. *Blood*, 97 Mass., 538; *Folger* v. *Columbian Ins. Co.*, 99 Mass., 267; *Castelanos* v. *Jones*, 1 Seld., 164; *Frees* v. *Ford*, 2 id., 176; *Edmiston* v. *Edmiston*, 2 Ohio, 251, 252.) In such a case nothing is presumed in favor of jurisdiction. It must be shown affirmatively. (*Ransom* v. *Williams*, 2 Wall., 313; *People* v. *Hulbert*, 46 N. Y., 110, 115; *Williams* v. *Barnaman*, 28 How. Pr., 59, 65; *Reynolds* v. *Stansbury*, 20 Ohio, 344, 353.) If certain facts required by statute to confer jurisdiction do not appear on the face of the record they are presumed not to exist. (*Jones*

v. *Reed*, 1 Johns. Cas., 20 ; *Bloom* v. *Burdick*, 1 Hill, 130 ; *People* v. *Ransom*, 56 Barb., 514, 519.) It is also settled that when the judgment of a court of a sister State is sought to be used in the courts of any other State, the record must show upon its face that the court had jurisdiction of the person of defendant as well as of the subject-matter of the action ; and if it fails to show such fact the judgment is a nullity, and it makes no difference whether the court is one of limited or of general jurisdiction within its own territory. (*Noyes* v. *Butler*, 6 Barb., 613, 617 ; *Shumway* v. *Stillman*, 6 Wend., 447 ; SAVAGE, Ch. J., 450, 453 ; *Aldrich* v. *Kinney*, 4 Conn., 380, 384, 385 ; *Lincoln* v. *Tower*, 2 McLean, 473 ; *Westervelt* v. *Lewis*, id., 511 ; *Gleason* v. *Dodd*, 4 Metc., 333 ; *Bradshaw* v. *Heath*, 13 Wend., 407 ; Cow. & Hill's Notes [1st ed.], 903, note 637 ; 1 Greenl. Ev., § 540 ; Story on Const., § 1310 ; *Pelton* v. *Platner*, 13 Ohio, 209, 219.) And where the court attempts to get jurisdiction by constructive service as in this case, the existence of the jurisdictional fact to give the right to constructive service and a proper and exact compliance with the statutory mode of constructive service must appear or the judgment is void. (*Mosier* v. *Waful*, 56 Barb., 80 ; *Cook* v. *Farren*, 34 id., 95 ; *Bixby* v. *Smith*, 5 N. Y. S. C., 279, 281 ; *Hallett* v. *Righters*, 13 How. Pr., 43 ; *Whitehead* v. *Post*, 3 West. L. M., 195 ; 2 McVey's Ohio Dig., 121, par. 61.) Although the record states facts showing jurisdiction it may be contradicted as to those facts, and if they do not exist the record is a nullity. (*Thompson* v. *Whitman*, 18 Wall., 457 ; *Knowles* v. *Gas-light Co.*, 19 id., 58 ; *Dobson* v. *Pearce*, 12 N. Y., 156, 164 ; *Hoffman* v. *Hoffman*, 46 id., 30 ; *Webster* v. *Reid*, 11 How., 437, 460.) Where jurisdiction is obtained by false and fraudulent statements of fact made to the court, the judgment entered in such an action is void. (*Bradstreet* v. *Neptune Ins. Co.*, 3 Sumn., 600 ; *Webster* v. *Reid*, 11 How., 437, 460 ; *Jackson* v. *Jackson*, 1 Johns., 424, 433 ; *Borden* v. *Fitch*, 15 id., 121, 145 ; *Burnley* v. *Stevenson*, 24 Ohio St., 474, 480 ; *Noyes* v. *Butler*, 6 Barb., 613, 616 ; *Kinnier* v. *Kinnier*, 45 N. Y., 535 ; *Dunlap* v. *Cody*, 31 Iowa, 260 ; 7 Am., 129 ; Story on Confl. Laws, § 609 ; *Lazier* v. *Westcott*, 26 N. Y., 146, 151 ; *Kerr* v. *Kerr*, 41 id., 272, 275.) The existence of the jurisdictional fact may be disproved by parol evidence, although it is

distinctly averred in the record. (*Starbuck* v. *Murray*, 5 Wend., 148; *Webster* v. *Reid*, 11 How., 437, 459.)

On the hearing at General Term the order appealed from was affirmed, with costs, on the opinion delivered by the surrogate.

Present — MULLIN, P. J., SMITH and TALCOTT, JJ.

Order appealed from affirmed with costs, on the opinion delivered by surrogate.